# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

***

GEORGE TYRONE DUNLAP, JR.,

                Plaintiff,

vs.

WARDEN DWIGHT NEVIN, *et al.*,

                Defendants.

2:12–cv–1370–JCM–VCF

**REPORT & RECOMMENDATION**

      This matter involves Plaintiff George Tyrone Dunlap's civil rights action against High Desert State Prison's warden and various correctional officers. (Amend. Compl. #11[1]). Five motions are currently before the court: (1) Defendants' partial motion to dismiss (#57); (2) Defendants' partial motion for summary judgment (#57); (3) Dunlap's motion for discovery (#62); (4) Defendants' motion to stay discovery (#67[2]); and (5) Dunlap's motion for default (#77). For the reasons stated below, the court recommends granting Defendants' motion to dismiss, denying Defendants' motion for summary judgment, denying Dunlap's motion for discovery, denying Defendants' motion to stay as moot, and denying Dunlap's motion for default.

## BACKGROUND

      George Tyrone Dunlap alleges to have been repeatedly abused by prison officials at High Desert State Prison. Between October 30, 2010 and January 24, 2011, correctional officers "not only tampered

---

[1] Parenthetical citations refer to the court's docket.
[2] Defendants' motion to stay discovery (#67) is included in Defendants' response to Dunlap's motion for discovery. This was improper. *See* Special Order 109(III)(F)(4) ("A separate document must be filed for each type of document or purpose. Examples: separate documents must be filed for response and motion rather than a response and counter motion in one document.").

1

with [Dunlap's] food tray to cause nausia [*sic*] and induce vomitting [*sic*]," but they also encouraged other inmates "to harass and assault" him. (Amend. Compl. (#11) at 1, 6). The officers employed "vigilante tactics" to punish Dunlap for his crimes and retaliate against him for using the prison's grievance system. (*Id.*). For instance, on January 4, 2011, Defendant Correctional Officer Baca purposefully placed Dunlap in extra tight handcuffs while Dunlap was interrogated in connection with a "gang plot." (*Id.* at 8–9).

Between January 11, 2011 and January 25, 2011, Dunlap's situation deteriorated. Defendant Correctional Officers Height, Gonzales, and Atkins allegedly announced that "[i]t's time to shower the cho-mo's,"[3] and then locked Dunlap inside a shower cage while other inmates spit and tossed urine on him. (*Id.* at 10–11). Petrified by fear, Dunlap sat motionless in the shower cage and took the abuse. (*Id.*)

However, the worst had yet come. Between February 16, 2012 and November 7, 2012, Defendant Correctional Officers Baker and Hessler forced Dunlap to undergo a series of demeaning and sexually abusive strip searches. (*Id.* at 14–21). Dunlap alleges that he was sexually assaulted and harassed by Defendant Baker when Baker—an allegedly avowed homosexual—made gross sexual innuendo and then performed a sexually invasive pat-down, which included grabbing, rubbing, and touching Dunlap's genitals after being moved into an isolated activity room. (*Id.*)

Dunlap further alleges that Baker ordered Dunlap to strip and pose in various positions for Baker's personal gratification. (*Id.*) Dunlap also alleges that Defendant Hessler sexually assaulted him when Hessler subjected Dunlap to a "dick check" because Hessler is "the dick police." (*Id.*) Dunlap states that he advised Defendants Neven, Wickham, and Bean of these incidents; and that they repeatedly ignored Dunlap's requests for help. (*Id.*)

---

[3] According to Dunlap's complaint, a "cho mo" prison slang for child molester.

2

As a result, Dunlap commenced this civil action. (*Id.*) On April 24, 2014, the Honorable James C. Mahan, U.S. District Judge, screened Dunlap's complaint pursuant to 28 U.S.C. § 1915(A). Judge Mahan permitted five counts of Dunlap's complaint to proceed: (1) an Eighth Amendment claim for physical abuse and retaliation related to Dunlap's food poisoning; (2) an Eighth Amendment claim for excessive force related to the extra tight handcuffs; (3) a First Amendment claim for retaliation and Eighth Amendment claim for abuse at the hands of fellow prisoners related to the shower cage incident; (4) an Eighth Amendment claim for sexual abuse; and (5) a Fourth Amendment claim for sexually abusive strip searches. (*See* Screening Or. (#10) at 1–10).

## DISCUSSION

The parties' filings present four questions: (1) whether counts one through three of Dunlap's complaint fail to state a claim upon which relief can be granted; (2) whether Defendants are entitled to summary judgment on counts four and five; (3) whether Dunlap's motion for discovery "appears reasonably calculated to lead to the discovery of admissible evidence;" and (4) whether Dunlap is entitled to default judgment. Each question is addressed below.

**I.**     **Whether Counts One through Three should be Dismissed**

Defendants move to dismiss three of Dunlap's claims on various grounds, including res judicata, collateral estoppel, and Dunlap's failure to plead "sufficient factual matter" against Defendant Cox. (*See* Def.'s Mot. to Dismiss (#57) at 7–20). Before considering Defendants' arguments, the court begins its analysis by reviewing the applicable legal standard.

**A.**     ***Legal Standard***

Federal Rule of Civil Procedure 12 governs motions for judgment on the pleadings. Under Rule 12(b)(6), the court may dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." *See* FED. R. CIV. P. 12(b)(6). This occurs when a complaint does not include "[a] short and

3

plain statement of the claim showing that the [plaintiff] is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Supreme Court's decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) provide that a complaint's allegations must cross "the line from conceivable to plausible" to satisfy Rule 8's requirements. *Iqbal*, 556 U.S. at 680; *Twombly*, 550 U.S. at 546 (characterizing the line as separating "possibility and plausibility"). The Court prescribed a two-step procedure for determining whether a complaint's allegations cross that line.

First, the court the court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "speculative," *see Twombly*, 550 U.S. at 555, "merely consistent with liability," *Iqbal*, 556 U.S. at 678, "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim, *id*. at 681, or couch legal conclusions as factual allegations. *Id*. at 697.

Second, the court must determine whether the complaint states a "plausible" claim for relief. *Id*. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted).

If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id*. (citing FED. R. CIV. P. 8(a)(2)). When the allegations in the complaint have not crossed the line from conceivable to plausible, it must be dismissed. *Twombly*, 550 U.S. at 570.

/// /// ///

/// /// ///

/// /// ///

4

**B.** *Judicial Notice of Matters Outside the Pleadings*

As a preliminary matter, the court must decide whether it may consider "matters outside the pleadings" and take judicial notice of Dunlap's prior civil rights action against Warden Neven and various correctional officers employed at High Desert State Prison. The court concludes that it may.

When deciding a Rule 12(b)(6) motion to dismiss, the court may not consider "matters outside the pleadings" without converting the motion to dismiss into a motion for summary judgment. FED. R. CIV. P. 12(d). However, under Federal Rule of Evidence 201, the court may take judicial notice of "matters of public record" while considering a motion to dismiss. *Mack v. S. Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991); *Intri–Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

Rule 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2); *see also United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("Since the effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and in effect, directing a verdict against him as to the fact noticed, the fact must be one that only an unreasonable person would insist on disputing.") (citation omitted). Where, as here, a party requests the court to take judicial notice of a fact, the court "must" take judicial notice if it is supplied with the necessary information. FED. R. EVID. 201(c).

Defendants move the court to judicially notice its own record. Exhibits A through F of Defendants' motion to dismiss contain copies of the pleadings, orders, and judgment in *George Tyrone Dunlap, Jr. v. Warden Neven, et al.*, No. 2:09–cv–02394–RLH–GWF (D. Nev. Feb. 22, 2011). These documents are available through the court's public access to court electronic records ("PACER")

website. (*See, e.g.*, Exhibit A (#57-1) at 1). The court concludes that exhibits A, C, E, and F[4] are suitable for judicial notice. Courts routinely take judicial notice of their own court records. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006); *see also Genentech, Inc. v. U.S. Int'l Trade Comm'n*, 122 F.3d 1409, 1417 (Fed. Cir. 1997) (citing 21 WRIGHT & GRAHAM, FEDERAL PRACTICE & PROCEDURE § 5106, at 505 (1977) ("'[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.'").

Exhibit A is a copy of Dunlap's prior complaint. It was filed on February 22, 2011 and stated two causes of action that are relevant here. Count three pled an Eighth Amendment claim deliberate indifference against Warden Neven and various correctional officers at High Desert State Prison, including Defendants Atkins, Gonzales, and Height, and Morrow. *See Dunlap, Jr.*, No. 2:09–cv–02394–RLH–GWF, Compl. at 6–6B (D. Nev. Feb. 22, 2011). Dunlap alleged that Atkins, Gonzales, and Height, and Morrow poisoned his food, took no action while other officers harassed Dunlap, and locked Dunlap "inside of a shower stall" and allowing "other inmates [to] spit and toss urine on" him. *See id*. at 6, 6B, 6G. Additionally, count five pled an Eighth Amendment claim against Defendant Baca in connection with handcuffs that Baca placed too tightly on Dunlap. *Id*. at 8–8F.

Exhibit C is a copy of the Honorable Roger L. Hunt, U.S. District Judge's order granting summary judgment against Dunlap's February 22, 2011 complaint. (*See* Ex. C (#57-3) at 1).

Exhibits E and F are copies of the Ninth Circuit's affirmance of Judge Hunt's order and its formal mandate against Dunlap. (*See* Ex. E (#57-5) at 1); (Ex. F (#57-6) at 1).

---

[4] It is unnecessary to take judicial notices of Exhibits B and D, which are copies of Defendants' motion for summary judgment and Dunlap's notice of appeal because they are not needed to decide the res judicata and collateral estoppel questions for which they were proffered.

### C.      *Counts One and Three Should be Dismissed*

Having decided that the court may take judicial notice of Dunlap's prior action, the court turns to the merits of Defendants' motion to dismiss. Defendants argue that Dunlap's claims should be dismissed because they are barred by res judicata. Generally, affirmative defenses—like res judicata—may not be raised in a motion to dismiss. *See* FED. R. CIV. P. 8(c); WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, § 1277 (3rd ed. 2010). However, an exception exists where—as here—the affirmative defense does not raise an issue of disputed fact. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (permitting consideration of a res judicata defense on a rule 12(b)(6) motion to dismiss); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (permitting the same). Because the court judicially noticed Dunlap's prior action, Defendants res judicata defense does not raise an issue of disputed fact. *See Jones*, 29 F.3d at 1553. This permits the court to consider the defense now. *Scott*, 746 F.2d at 1378.

Res judicata precludes parties from relitigating issues "that were or could have been raised" in a prior action after the court renders a final judgment on the merits. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). To trigger res judicata, the earlier suit must have (1) involved the same "claim" or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies. *Mpoyo v. Litton Electrc–Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005); *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). Generally, res judicata prevents a party from raising claims arising out of the same transaction or series of transactions. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982).

With this in mind, the court now compares Dunlap's February 22, 2011 civil rights action with the instant action. In Dunlap's previous action, he sued Warden Neven and various Correctional Officers, including Defendants Atkins, Gonzales, Height, and Morrow. *See Dunlap, Jr.*, No. 2:09–cv–02394–RLH–GWF, Compl. at 2, 6–6B (D. Nev. Feb. 22, 2011). Dunlap alleged that Defendants violated

his Eighth Amendment right to be free from cruel and unusual punishment when, between November 21, 2011 and January 24, 2011, Defendants poisoned Dunlap's food tray, took no action while other officer harassed him, and locked him "inside of a shower stall" and allowed "other inmates [to] spit and toss urine on" him. *See id.* at 6, 6B, 6G.

Here, count one alleges that Defendants Daniels, Height, John Doe–1 (Gonzales), and John Doe–2 (Atkins) violated Dunlap's Eighth Amendment right against cruel and unusual punishment between October 30, 2010 and January 25, 2011, when they "tampered with [Dunlap's] food tray to cause nausia [*sic*] and induce vomitting [*sic*], and encouraged other inmates "to harass and assault" him. (*See* Amend. Compl. (#11) at 6). Similarly, count three alleges that Defendants Height, Gonzales, and Atkins violated Dunlap's Eighth Amendment right against cruel and unusual punishment between January 11, 2011 and January 25, 2011, when they assaulted Dunlap with spit and urine while keeping him locked in a shower cage in retaliation for his grievance activities and because Dunlap is a convicted "cho mo." (*Id.* at 10–13).

Res judicata applies here. With regard to the first element, the court finds that counts one and three of the instant action are identical to count three in the previous action. Here, Dunlap alleges that Defendants Atkins, Baca, Daniels, Gonzales, Height, Neven, and Morrow poisoned his food tray and permitted other inmates to spit and toss urine on him between October 30, 2010 and January 24, 2011. (*See* Amend. Compl. (#11) at 1, 6, 10–13). The only difference between the Dunlap's prior claim and the instant claims is that Dunlap now alleges that the conduct began in October, not November. This additional allegation is inconsequential. Res judicata bars claims arising out of the same transaction or series of transactions, which that could have been raised in the prior action." *See* Restatement (Second) of Judgments § 24 (1982); *McCurry*, 449 U.S. at 94.

8

The second element of res judicata—which requires a final judgment on the merits—is also satisfied. *See Mpoyo*, 430 F.3d at 987 (identifying the second element). On March 2, 2012, the Clerk of Court entered judgment in favor of Defendants Atkins, Gonzales, Height, Neven, and Morrow against Dunlap. *See Dunlap, Jr.*, No. 2:09–cv–02394–RLH–GWF, Clerk's Entry of J. (#85) at 1.[5] On January 18, 2013, the Ninth Circuit issued a memorandum disposition affirming Judge Hunt's judgment in favor of Defendants. *See Dunlap, Jr.*, No. 2:09–cv–02394–RLH–GWF, Doc. #92 #93; (Ex. E (#57-5) at 1). And, on February 11, 2013, the Ninth Circuit issued a mandate stating that judgment became final on January 18, 2013. *See Dunlap, Jr.*, No. 2:09–cv–02394–RLH–GWF, Doc. #93 (D. Nev. Feb. 22, 2011); (Ex. F (#57-6) at 1).

Finally, the third element—which requires identity or privity between the parties—is met. *See Mpoyo*, 430 F.3d at 987 (identifying the third element). Like counts one and three of the instant action, count three of Dunlap's previous action named Defendants Atkins, Gonzales, Height, Neven, and Morrow as Defendants. These parties are identical.

In the new action, Dunlap also names Daniels and Baca as Defendants. Dunlap's claims against Baca and Daniels and barred for several reasons. First, they arise from the same series of events. RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982). Second, they "could have been raised" before. *McCurry*, 449 U.S. at 94. Third, Daniels and Baca are in privity with Defendants Neven, Atkins, Gonzales, and Height because they allegedly violated the same right with respect to the same subject that was adjudicated on the merits. *See Tahoe-Sierra Pres. Council*, 322 F.3d at 1082.

---

[5] Dunlap argues that res judicata does not apply because Atkins, Baca, Height, and Neven were either dismissed without prejudice or never served in this previous action. (*See* Pl.'s Opp'n (#71) at 1). This argument is meritless. Res judicata requires, *inter alia*, entry of a judgment on the merits. Here, this element was satisfied. *See Dunlap, Jr.*, No. 2:09–cv–02394–RLH–GWF, Summ. J. Or. (#84) at 1–6; Clerk's Entry of J. (#85) at 1.

Dunlap argues that res judicata should not apply because Defendants Atkins, Gonzales, and Height were not served in the previous action. (*See* Pl.'s Opp'n (#71) at 1). Normally, this argument would prevail. It is well settled that named but unserved defendants are not parties for res judicata purposes. *Hart v. Yamaha–Parts Distrib., Inc*., 787 F.2d 1468, 1471 (11th Cir.1986); *see also Armstrong v. Silvia*, No. 2:11–cv–00965 GEB KJN, 2012 WL 5878229, at *2 (E.D. Cal. Nov. 20, 2012) (discussing res judicata and service of process in the context of a prisoner's civil rights action).

However, this defect is cured by the concept of privity. As mentioned before, privity describes a relationship between two parties that is sufficiently close for a judgment for or against one party to bind or protect another party. *Tahoe-Sierra Pres. Council*, 322 F.3d at 1077; *Sw. Airlines Co. v. Texas Int'l Airlines*, 546 F.2d 84, 95 (5th Cir. 1977). Privity protects several types of relationships, including where the nonparty's interests were adequately represented by a party in the prior suit. *Id*.; *see also* William J. Katt, *Res Judicata and Rule 19*, 103 Nw. U. L. Rev. 420–21 (2009) (discussing *Taylor v. Sturgell*, 553 U.S. 880, 894–95 (2008) expansion of the concept of privity)).

Here, Atkins, Gonzales, and Height are protected from Dunlap's second action because Judge Hunt and the Ninth Circuit decided on the merits that Dunlap presented no evidence that anyone poisoned his food tray or locked him inside of a shower stall and allowed other inmates to spit and toss urine on him. He cannot relitigate these issues now.

Therefore, the court recommends dismissing counts one and three of Dunlap's complaint.

### D.    *Count Two Should be Dismissed*

Count two is also barred by res judicata. Count two alleges that Dunlap's Eighth Amendment rights were violated when Baca placed Dunlap in extra tight handcuffs on January 4, 2011. (*See* Amend. Compl. (#11) at 2:19). Count five of Dunlap's February 22, 2011 complaint states the same cause of action against the same Defendant for the same conduct. (*See* Ex. A (#57-1) at 8F). For the reasons

stated above, res judicata bars relitigation of this claim. *See McCurry*, 449 U.S. at 94 (stating that res judicata precludes parties from relitigating claims that were raised in a prior action after the court renders a final judgment on the merits).

### E.   *Alterative Grounds for Dismissing Defendants Atkins, Cox, Gonzales, and Morrow*

In addition to res judicata, Defendants also argue that Defendant Cox should be dismissed because Dunlap failed to plead sufficient factual matter against Cox. (Def.'s Mot. to Dismiss (#57) at 7:23). The court agrees. Dunlap's complaint identifies Cox as a Defendant, (*see* Amend. Compl. (#11) at 2 at ¶ 3), but fails to lodge any factual or legal allegations against him, (*see generally id.* at 5–30), except for one conclusory allegation: Cox "was advised of officers' sexual misconducts but would not and did not remove the threat to plaintiff." *Iqbal* mandates Cox's dismissal because this conclusory allegation does not plausibly show that Dunlap is entitled to relief. *See Iqbal*, 556 U.S. at 678.

The court also finds that it may dismiss Defendants Atkins, Gonzales, and Morrow under Federal Rule of Civil Procedure 4(m). Rule 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is failed, the court . . . must dismiss the action without prejudice against that defendant." FED. R. CIV. P. 4(m); *see also Mann v. American Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003) (stating that dismissal under Rule 4(m) is permissive, not mandatory). Here, Dunlap's amended complaint was filed on April 24, 2013. (*See* Amend. Compl. (#11) at 1). Dunlap's 120 days expired on August 22, 2013. To date, Atkins, Gonzales, and Morrow have not been served. (*See* Accpt. Serv. (#69) at 1–2) (stating that Defendants cannot accept service on behalf of Atkins, Gonzales, and Morrow). Therefore, Rule 4(m) permits the court to dismiss Atkins, Gonzales, and Morrow.

## II.   <u>Whether Defendants are Entitled to Summary Judgment on Counts Four & Five</u>

Having decided that the court should grant Defendants' motion to dismiss on counts one through three, the court now considers whether Defendants are entitled to summary judgment on counts five and

11

six. Defendants move for summary judgment on two grounds. Defendants argue that they are entitled to summary judgment because (1) "the evidence does not support Plaintiff's allegations" and (2) "Defendants are entitled to qualified immunity." (*See* Def.'s Summ. J. Mot. (#57) at 20:22, 23:3). Before discussing these arguments, the court begins its analysis by reviewing the applicable legal standard under Rule 56.

**A.   *Legal Standard***

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Rule 56(a) provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Material facts" are facts that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 249 (citing 10A C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2725, pp. 93–95 (1983)). A dispute regarding material facts is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The primary difference between a 12(b)(6) motion to dismiss and a motion for summary judgment is that the former is theoretical and the latter is factual. Motions to dismiss focus on the pleadings' allegations, and examine whether the plaintiff has shown that he could be entitled to relief. *See, e.g.*, *Iqbal*, 556 U.S. at 678. By contrast, motions for summary judgment focus on the evidence (i.e., "material facts"), and consider whether the moving party is entitled to relief. *See, e.g*., FED. R. CIV. P. 56(c)(1)(B), (e).

At summary judgment, the court's role is not to weigh the evidence, make credibility determinations, or determine the truth. *See Anderson*, 477 U.S. at 249, 255. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. The

purpose of summary judgment is (1) "to isolate and dispose of factually unsupported claims," and (2) to determine whether a case "is so one-sided that one party must prevail as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Anderson*, 477 U.S. at 252.

If the moving party meets its initial burden, the burden shifts to the opposing party to set forth "specific facts showing that there is a genuine issue for trial." *F.T.C. v. Stefanchik*, 559 F.3d 924, 927 (9th Cir. 2009) (citation omitted). "[B]ald assertions of a mere scintilla of evidence" are insufficient. *Id.* at 929 (citation omitted). The party opposing summary judgment party must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

**B.    *Count Four: Defendants' Motion for Summary Judgment Should be Denied***

Dunlap's fourth cause states a claim under the Eighth Amendment for cruel and unusual punishment in connection with a series of allegedly abusive strip searches conducted by Defendants Baker and Hessler. (Amend. Compl. (#11) at 14–21). The abusive searches allegedly occurred on February 16, 2012, April 5, 2012, May 3, 2012, May 4, 2012, and May 11, 2012. (*Id.*) Before examining this claim, the court begins its analysis by reviewing the Eighth Amendment and identifying the elements that Dunlap must support with evidence to survive summary judgment.

**1.    Strip Searches & the Eighth Amendment**

The Eighth Amendment proscribes the infliction of cruel and unusual punishment on prisoners. U.S. CONST. amend. VIII. Whether a particular event constitutes "cruel and unusual punishment" is a question of "the evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian*, 503 U.S. 1 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337 (1981)). Today, there is no question that sexual abuse offends society's standards of decency. *See Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000).

13

Inmates, however, have a "limited right to bodily privacy." *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9; *Calhoun v. DeTella*, 319 F.3d 936, 939 (9th Cir. 2003). Instead, the Eighth Amendment prohibits unnecessary and wanton infliction of pain and punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Strip searches "designed to demean and humiliate" violate this standard. *Calhoun*, 319 F.3d at 939. However, "significant but episodic physical contact" that occurs during a strip search does not. *Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002).[6]

In addition to prohibiting the unnecessary and wanton infliction of pain, the Eighth Amendment also imposes a duty on prison officials employed in a supervisory capacity to protect prisoners from sexual abuse. *Schwenk*, 204 F.3d at 1197. To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to the prisoner's safety. *Farmer v. Brennan*, 511 U.S. 825, 932 (1994); *see also Labatad v. Corrections Corp. of Am*., 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. Cnty of Washoe*, 290 F.3d 1175, 1187 (9th Cir.2002)).

Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See Farmer*, 511 U.S. at 834; *Labatad*, 714 F.3d

---

[6] Several courts have found that touching—or even grabbing—a prisoner's genitals during a strip search complies with the Eighth Amendment. *Hart v. Celaya*, 548 F. Supp. 2d 789, 803–03 (N.D. Cal. 2008) (holding that officer did not violate the Eighth Amendment by requiring a prisoner to lift his genitals during a strip search); *Hill v. Blum*, 916 F. Supp. 470, 473 (E.D. Pa. 1996) (holding that an officer touching a prisoner's genitals did not violate the Eighth Amendment); *Excell v. Fischer*, No. 08–cv–945, 2009 WL 3111711 (N.D.N.Y. Sep. 24, 2009) (holding that a claim that officer grabbed and squeezed plaintiff's genitals during strip search was not an Eighth Amendment violation); *Davis v. Castleberry*, 364 F. Supp. 2d 319, 321 (W.D.N.Y. 2005) (holding that an allegation that correction officer grabbed inmate's genitals during a pat frisk insufficient); *Morrison v. Cortright*, 397 F. Supp. 2d 424, 425 (W.D.N.Y. 2005) (holding that allegations that a correction officer touched plaintiff's buttocks, and that another "rubbed up against plaintiff['s] buttocks with [the officer's] private part" during a strip search insufficiently serious to establish a constitutional claim); *Montero v. Crusie*, 153 F. Supp. 2d 368, 373, 375 (S.D.N.Y. 2001) (allegation that correction officer squeezed inmate's genitals during pat-frisks on several occasions does not show sufficiently serious deprivation to establish Eighth Amendment violation, particularly where inmate did not allege that he was physically injured by such conduct).

14

at 1160. The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The subjective requirement is met if the prison official acted with a state of mind that exceeds "[m]ere negligence." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

Accordingly, the state a prima facie case of sexual abuse or harassment under the Eighth Amendment, Dunlap must proffer evidence that Dunlap's strip search (1) was wantonly harmful or designed to humiliate, (2) objective deprived him of life's necessities and (3) was intentionally ignored by prison supervisors.

### 2.   Genuine Disputes of Material Fact Exist

Dunlap satisfied this standard with regard to Defendants Baker, Wickham, and Neven. Dunlap's opposition to Defendants' motion for summary judgment includes two affidavits by fellow inmates, (*see* Exs. 8–9 (#63-2) at 125–29), an affidavit excited by himself (Dunlap Aff. (#64) at 14–15), and numerous grievance forms[7] addressed to Defendants Neven and Wickham regarding Baker's alleged assault (*see generally* Exs. 5–11 (#63-2) at 130–93).

The first affidavit, which was purportedly executed by inmate LaVale Solomon, states *inter alia* that "I witnessed what 'Officer Baker' did, not only to 'Dunlap,' but . . . to other inmates as well." (LaVale Aff. (#63-2) Ex. 8 at 2:1–3). The second affidavit, which was purportedly executed by inmate Gregory Dela Rosa, states *inter alia* that Baker routinely conducts strips searches that are designed to humiliate and demean, and that Dela Rosa is "willing to testify for Inmate Dunlap" regarding Defendant Baker's alleged conduct. (Dela Rosa Aff. (#63-2) Ex. 9 at 2:14–15); (*see also* Dunlap Aff. (#64) at 14–15) (recounting similar facts). The numerous grievance forms, which were submitted as the alleged

---

[7] Several but not all of the grievance forms complain of Defendant Baker's alleged behavior.

15

abuse occurred, reiterate and relate this information to Defendants Neven and Wickham. (*See generally* Exs. 5–11 (#63-2) at 130–93).

This evidence creates a genuine issue of material fact regarding the nature of Baker's allegedly ongoing searches and Neven and Wickham's alleged difference to Dunlap's abuse. Defendants proffer evidence that the strip search did not violate the Eight Amendment. (*See* Baker Decl. (#57-7) at 2–3). In opposition, Dunlap proffered evidence that it did. (*See, e.g*., Grievance Form (#63-2) Ex. 6 at 24) (alleging that Baker "constantly blows kisses at me. He used a banana to mimic oral sex. He already took sexual advantage of me."); (Grievance Form (#63-2) Ex. 11 at 43–44) ("I was ordered to do a strip search, forced to remove my clothing and stand in multiple positions . . . so that [Baker] could take sexual advantage of me, forced to pull back the 'foreskin' of my penis, so that S C/O Baker could view the head of my penis for his own . . . gratification").

This dispute is genuine because a reasonable jury presented with the inmates' testimony could return a verdict for Dunlap. *See Anderson*, 477 U.S. at 248. This dispute is material because the parties' differing versions of the facts affect the outcome of the case. *Id*. Consequently, the court recommends denying Defendants' motion for summary judgment on count four with regard to Defendants Baker, Wickham, and Neven.

### 3. Defendants' Credibility Concerns are Misplaced

Defendants ask the court to discredit Dunlap's evidence, including his supporting affidavits and grievance forms, because the evidence was written by Dunlap. (Def.'s Reply (#73) at 9:16). The court recognizes Defendants' concern. Dunlap's allegations, evidence, and status as a repeat litigator raise credibility problems. However, these problems play no role at summary judgment. At this stage, the court's role is not to "weigh[] the evidence," make "[c]redibility determinations," or "determine the truth." *See Anderson*, 477 U.S. at 243, 255. Rather, the evidence of the nonmovant is "to be believed,

and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

Although the affidavits could have been written by Dunlap, Defendants have not proffered any reason why it would be "unjustifiable" for the court to infer—as the law requires—that the affidavits were written by LaVale and Dela Rosa.[8] *See also Arnstein v. Porter*, 154 F.2d 464 (2nd Cir. 1946) (in Wright, Miller, Kane, Federal Practice & Procedure: Civil § 2726 (3rd ed. 1998)) (denying a motion for summary judgment even though the nonmovant's testimony was "fantastic[al]" because only a jury should determine plaintiff's credibility").

The court's recommendation that Dunlap's evidence is "to be believed," *Anderson*, 477 U.S. at 255, is bolstered by other considerations. First, courts may make credibility determinations on summary judgment in limited circumstances; but those circumstances are not present here. *See* Wright, Miller & Kane, *supra*, at § 2726. For instance, "[d]oubts as to the credibility of the **movant's affiants** or witness may lead the court to conclude that a genuine issue exists." *Id*. (emphasis added). Similarly, under the "sham affidavit rule," the court may disregard an affidavit if it appears that it was executed after the motion for summary judgment was filed and for the sole purpose of defeating summary judgment by contradicting prior deposition testimony. *Id*.; *see also Foster v. Arcata Assoc.*, 772 F.2d 1453, 1462 (9th Cir. 1985), *cert. denied*, 475 U.S. 1048 (1986) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").[9]

Second, the court is unpersuaded by Defendants' argument that it should discount Dunlap's evidence because it is "self-serving," "handwritten," uncorroborated, and "fail[s]s to establish sufficient proof of a genuine issue." (*See* Def.'s Reply (#73) at 9:12–18). Dunlap is *pro se*, incarcerated, and was

---

[8] According to the LaVale Affidavit, it was written by Dunlap in LaVale's presence and then read back to LaVale for his signature and approval.

[9] The sham affidavit rule is here inapplicable because Dunlap has not been deposed and the affidavits in question were executed before Defendants moved for summary judgment.

17

allegedly sexually assaulted by a corrections officer. If the court does not regard his affidavits and handwritten evidence as credible for purposes of summary judgment, the court would effectively strip Dunlap of the ability to seek legal recourse for sexual assault—an act that rarely has third-party witnesses. *Neil v. Biggers*, 409 U.S. 188, 200–01 (1972) ("In the nature of the crime, there are rarely witnesses to a rape other than the victim.").

Third, the underlying question raised by Dunlap's Eighth Amendment claim is whether Defendant Baker "designed [the strip search] to demean and humiliate." *Calhoun*, 319 F.3d at 939. Resolving this question requires the trier of fact to examine Baker's state of mind and make a credibility determination regarding Baker and Dunlap. These inquiries are inappropriate for summary adjudication. *See* WRIGHT, MILLER & KANE, *supra*, at § 2726 ("A similar problem involving credibility arises when the knowledge of the events or occurrences on which the action is based lies exclusively within the control of the party moving for summary judgment. This situation occurs most commonly in actions in which the main issue involves the movant's state of mind.").

4.   Qualified Immunity is Inapplicable

Finally, the court rejects Defendants' contention that they are protected by qualified immunity for the alleged sexual assault. (*See* Def.'s Summ. J. Mot. (#57) at 23). The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This does not include sexual assault. *See, e.g.*, *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 238 (S.D.N.Y. 2005) (denying a correction officer's motion for summary judgment, stating that "qualified immunity does not protect McClenning because the sexual assault of a prison inmate is outside the scope of a corrections officer's official duties.").

**C.**     ***Count Five: Defendants' Motion for Summary Judgment Should be Denied***

The court also recommends denying Defendants' motion for summary judgment on count five. Count five of Dunlap's complaint alleges that his Fourth Amendment rights were violated by Baker's unreasonable search, described above. Generally, strip searches do no violate prisoner's Fourth Amendment rights. *Michenfelder*, 860 F.2d at 333–34. However, strip searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" may be unconstitutional. *Id*. For the same reasons discussed above, the court recommends denying Defendants' motion for summary judgment with regard to Defendants Baker, Wickham, and Neven.

**III.**     **Whether Dunlap's Motion for Discovery Appears Reasonably Calculated to Lead to the Discovery of Admissible Evidence**

The parties' filing present a third question: whether Dunlap's motion for discovery "appears reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b). Dunlap's motion seeks to compel information regarding (1) Defendant Height; (2) Defendant Baker; (3) Defendant Hessler; and (4) general information regarding Defendants Height, Atkins, Gonzales, and the prison's administrative records. (*See* Pl.'s Disc. Mot. (#62) at 2–3).

Because the court recommends dismissing Defendants Height, Hessler, Atkins, and Gonzales, Dunlaps discovery requests regarding those Defendants is now irrelevant and not "reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b). Therefore, Dunlap's first, third, and four discovery request are denied.

The court also denies Dunlap's second discovery request, which seeks information regarding Defendant Baker. (*See* Pl.'s Disc. Mot. (#62) at 2). Although the court does not recommend dismissing Baker, the information Dunlap seeks is not relevant to Dunlap's claim against Baker. Dunlap seeks, for example, the "total sexual history of Robert Baker regarding homosexuality" and information regarding

the "time frames and dates Robert Baker worked both prison yards of SDCC and HDSP." (*Id.*) This information is irrelevant to the one remaining issue in Dunlap's case against Baker: whether Baker designed Dunlap's strip search to demean and humiliate in violation of Dunlap's Fourth and Eighth Amendment rights. *See Calhoun*, 319 F.3d at 939. This request is denied.

**IV.**     **Whether Dunlap is Entitled to Default Judgment**

One issue remains: Dunlap appears to move for default judgment against Defendants pursuant to Local Rule 7-2(d). (*See* Pl.'s Default Mot. (#77) at 1). Local Rule 7-2(d) governs the time to respond to motions and oppositions. Accordingly, this request is misplaced. Regardless, default judgment is inapplicable where, as here, defendants have appeared and are litigating the case. *See* FED. R. CIV. P. 55. Dunlap's motion is denied.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Defendants' motion to dismiss (#57) is GRANTED with regard to COUNTS ONE, TWO, and THREE.

IT IS FURTHER RECOMMENDED that Defendants' motion for summary judgment (#57) on COUNTS FOUR and FIVE are DENIED with regard to DEFENDANTS BAKER, WICKHAM, and NEVEN.

IT IS FURTHER RECOMMENDED that Dunlap's motion for discovery (#62) is DENIED.

IT IS FURTHER RECOMMENDED that Defendants' motion to stay discovery (#67) is DENIED AS MOOT.

IT IS FURTHER RECOMMENDED that Dunlap's motion for default judgment (#77) is DENIED.

IT IS SO RECOMMENDED.

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 10th day of March, 2014.


_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE